UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| BANGOR SAVINGS BANK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 1:25-CV-00652-JCN |
| | ) |
| DARLING CONSULTING GROUP, | ) |
| | ) |
| Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S
<u>MOTION TO COMPEL ARBITRATION</u>**

Darling Consulting Group ("DCG" or "Defendant") submits this memorandum of law in support of its motion to compel arbitration pursuant to the Federal Arbitration Act and the parties' Master Services Agreement, and to stay or dismiss this action filed by Plaintiff Bangor Savings Bank ("Bangor" or "Plaintiff").

**I.      INTRODUCTION**

This case arises from a commercial consulting relationship governed by a written Master Services Agreement ("MSA") executed by both parties on August 20, 2020. The MSA provides that Massachusetts law applies, that disputes regarding the services, Statements of Work, or the MSA itself are governed by that agreement, and that any such disputes must be resolved through binding arbitration before the American Arbitration Association in Boston. Bangor's Complaint disregards the MSA entirely, but the law does not permit a party to avoid its contractual obligations through omission. The MSA controls this dispute, and the Federal Arbitration Act ("FAA") requires enforcement of the parties' agreement to arbitrate.

DCG brings this motion solely to enforce the parties' binding arbitration agreement and related contractual provisions. In doing so, DCG expressly preserves, and does not waive, any

defenses available under Federal Rule of Civil Procedure 12, including but not limited to lack of personal jurisdiction, improper venue, and all contractual limitations, conditions, and defenses, including limitations of liability and damages caps.

DCG promptly invoked arbitration after receiving the Complaint, has never waived that right, and the claims asserted fall squarely within the MSA's broad scope. Accordingly, the Court should compel arbitration and stay or dismiss this action under 9 U.S.C. §§ 3–4.

## II. PRELIMINARY STATEMENT ON CHOICE OF LAW

On December 30, 2025, Bangor filed its Complaint in this Court. However, under the parties' MSA (attached here as **Exhibit 1**, and to the Complaint as Exhibit 8), the choice of law specified is Massachusetts.[1] The applicable provision in the MSA states as follows:

> **Governing Law**. This Agreement shall be binding upon the successors and assigns of the parties hereto and shall be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts. The parties agree to submit to the jurisdiction and venue of the state and federal courts located in the Commonwealth of Massachusetts for any suit relating to or arising from the SERVICES, subject to the arbitration provisions of Section 13, below.

MSA, Ex. 1 at 3.

Massachusetts courts enforce forum selection clauses if they are fair and reasonable. *See, e.g., Taylor v. Eastern Connection Operating, Inc.*, 465 Mass. 191, 194, 988 N.E.2d 408 (Mass. 2013) (Massachusetts forum selection clause upheld because it was negotiated by the parties and was not unfair or unreasonable). In addition, "[t]he opponent of a forum selection clause bears the 'substantial burden' of showing that enforcement of a forum selection clause would be unfair and unreasonable." *Id*. (internal citation and quotation omitted) In this case, the parties jointly negotiated the MSA and all provisions within it. There is nothing unfair or unreasonable about

---

[1] Choice of law is contested in this early stage of the proceedings, thus, Defendant will, with a full reservation of its rights to challenge the application of Maine law to this matter, cite to both Massachusetts and Maine law in this memorandum, as well as jurisdiction, venue, and all other defenses.

enforcing the choice of law provision to which both parties agreed and formally executed. Therefore, Massachusetts law governs the parties' dispute.[1] This provision addresses governing law and proceedings ancillary to arbitration and does not constitute a waiver of DCG's right to contest jurisdiction or venue in this Court.

### III. THE MSA CONTROLS THIS DISPUTE AND MUST BE ENFORCED AS WRITTEN.

The MSA governs the parties' commercial relationship and applies to the very services and Statements of Work that form the basis of Bangor's allegations. Federal, First Circuit, and Massachusetts law all require courts to enforce negotiated commercial contracts as written, and courts disregard such agreements only in extreme circumstances such as fraud, duress, or unconscionability. None of those circumstances exist here. Bangor has not challenged the MSA's validity, formation, or applicability; it simply omitted the contract from its Complaint.

#### A. Courts Enforce Commercial Agreements As Written Absent Extraordinary Circumstances.

The United States Supreme Court has repeatedly held that courts must respect the rights and obligations which sophisticated parties assign themselves in a contract. *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 474–76 (1989) (courts must "give effect to the contractual rights and expectations of the parties"); *Stolt-Nielsen S.A. v. Animal Feeds Int'l Corp.*, 559 U.S. 662, 681–82 (2010) (parties are free to structure agreements as they wish, and courts must enforce that structure).

The First Circuit applies this same rule: courts are "bound to enforce the agreement that the parties made." *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 10 (1st Cir. 2009); *Combined Energies v. CCI, Inc.*, 514 F.3d 168, 171 (1st Cir. 2008) (courts enforce the parties' chosen allocation of rights and duties unless a recognized contract-avoidance doctrine applies).

Massachusetts law is even more emphatic. It recognizes a "strong public policy favoring enforcement of agreements freely entered into by sophisticated parties." *McInnes v. LPL Fin., LLC*, 466 Mass. 256, 261, 994 N.E.2d 790 (Mass. 2013). Such agreements are set aside only when enforcement would be "unconscionable or wholly inequitable." *Drywall Sys., Inc. v. ZVI Constr. Co.*, 435 Mass. 664, 667, 761 N.E.2d 482 (Mass. 2002). Nothing in the Complaint suggests the existence of any such extraordinary circumstance.

### B. The MSA's Scope Clause Is Intentionally Broad And Squarely Encompasses This Dispute.

The MSA provides that it governs any dispute "regarding the SERVICES, SOW(s) [Statements of Work], or this Master Services Agreement." *See* MSA, Ex. 1 at 3. This scope clause is deliberately broad and comprehensive and is designed to capture all disputes arising from the parties' consulting relationship, including: (i) the SERVICES DCG performed; (ii) the deliverables, obligations, and commercial terms governing that work; and (iii) any controversy arising from or relating to the MSA itself.

Although DCG's project-specific documents were titled "Summary of Engagement Scope" and accompanied by fee schedules and a summary Engagement Letter, those documents served the same operative function as Statements of Work under the MSA by defining the scope of services, deliverables, and pricing for DCG's engagements. Bangor's allegations concern DCG's SERVICES, methodology, deliverables, and performance under those engagement documents. This is precisely the type of dispute the MSA expressly states it governs. Courts applying Massachusetts law enforce such broad scope provisions as written. *See Mass. Hwy. Dep't v. Perini Corp.*, 79 Mass. App. Ct. 430, 437–38 (2011) (broad coverage clause "evidences an intent to encompass all disputes arising from the performance of the agreement").

### C. The Transmittal Email Confirms Bangor's Notice And Assent To The MSA's Governing Role.

When DCG transmitted the MSA to Bangor, it expressly communicated its purpose and controlling effect. *See* email dated July 16, 2020 attached as **Exhibit 2**. The email stated that the attached **"Master Services Agreement... will act as our new confidentiality agreement moving forward"** and that **"[w]e will need the MSA and Fee Schedule signed and returned to begin the project"** *Id.* (emphasis added). Bangor thereafter signed the agreement, Fee Schedule, and work under multiple SOWs. Massachusetts law treats this type of pre-execution communication, coupled with years of contract performance, as confirming mutual assent and the parties' shared understanding that the MSA governed their relationship. *Situation Mgmt. Sys., Inc. v. Malouf*, 430 Mass. 875, 878–79, 724 N.E.2d 699 (Mass. 2000) (assent may be established through written communications and subsequent performance).

### D. Bangor Cannot Avoid A Contract It Signed And Under Which it Performed Merely By Omitting It From The Complaint.

Having executed the MSA, relied on the MSA, accepted services under the MSA, and paid invoices issued under the MSA, Bangor cannot disregard it now. Under Massachusetts law, a party that accepts the benefits of a contract is bound by its obligations. *Cambridgeport Sav. Bank v. Boersner*, 413 Mass. 432, 439, 597 N.E.2d 1017 (Mass. 1992).

Nor can Bangor create an end-run around, or blithely ignore the arbitration clause contained in, the MSA by filing a pleading that does not mention it. Courts enforce the governing contract even when the plaintiff fails to reference it or attempts to recharacterize a contract dispute in tort or quasi-contract. *See McInnes*, 466 Mass. at 263–64.

### E. Because The MSA Governs And This Dispute Falls Squarely Within Its Coverage, The Court Must Enforce The MSA As Written.

This case arises entirely out of DCG's performance of SERVICES under the MSA and its Statements of Work. It is the exact type of dispute the MSA was designed to control. Under Supreme Court, First Circuit and Massachusetts precedent, the Court must apply the MSA and enforce the parties' chosen contractual framework. No extreme circumstance exists that justify disregarding the contract or its unambiguous requirements. Accordingly, the MSA governs this dispute and should be enforced as written.

### IV. THE PARTIES MUST ARBITRATE THIS DISPUTE AS REQUIRED AS REQUIRED BY THE FAA AND THE MSA.

Massachusetts, Maine, and federal law all strongly favor arbitration as an efficient and reliable means of resolving commercial disputes. *See, e.g.*, *Miller v. Cotter*, 448 Mass. 671, 676, 863 N.E.2d 537 (Mass. 2007) (reversing denial of motion to compel arbitration and reaffirming Massachusetts' "unambiguous legislative and judicial policy favoring arbitration agreements"); *Mastrobuono v. Shearson Lehman Hutton, Inc.*, 514 U.S. 52, 62 (1995) (federal policy "strongly favors arbitration"); *Baker v. Securitas Sec. Servs. USA, Inc.*, 432 F. Supp. 2d 120, 123 (D. Me. 2006) (federal and Maine law "cast a generally favorable eye on arbitration agreements"). Massachusetts courts consistently enforce arbitration clauses in commercial contracts as written, absent a valid contract defense. *McInnes v. LPL Fin., LLC*, 466 Mass. 256, 261, 994 N.E.2d 790 (Mass. 2013).

Because this case is in federal court on diversity and concerns a commercial relationship between Massachusetts and Maine companies, the Federal Arbitration Act ("FAA") applies. 9 U.S.C. § 2; *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983). Section 2 provides that a written arbitration clause in a contract "evidencing a transaction involving commerce" is "valid, irrevocable, and enforceable," subject only to generally applicable state-law contract defenses. This section embodies the FAA's broad and liberal federal policy favoring

arbitration. Section 3 further provides that once a court is satisfied that the parties' dispute is referable to arbitration under a written agreement, it "shall" stay the case until arbitration is completed.

Federal courts in Maine apply the same test. A court must compel arbitration where, as here: (1) a written agreement to arbitrate exists; (2) the dispute falls within the scope of that agreement; and (3) the party seeking arbitration has not waived its rights. *Bangor Hydro-Elec. Co. v. New Eng. Tel. & Tel. Co.*, 62 F. Supp. 2d 152, 155–56 (D. Me. 1999). Maine federal courts emphasize that questions of arbitrability must be resolved with "a healthy regard for the federal policy favoring arbitration." *Me. Sch. Admin. Dist. No. 68 v. Johnson Controls, Inc.*, 222 F. Supp. 2d 50, 52–53 (D. Me. 2002).

The First Circuit frames the analysis identically. Courts must compel arbitration when: (1) there is a valid written arbitration agreement; (2) the dispute falls within its scope; and (3) the party seeking arbitration has not waived its right. *Combined Energies v. CCI, Inc.*, 514 F.3d 168, 171 (1st Cir. 2008); *Soto-Fonalledas v. Ritz-Carlton San Juan Hotel Spa & Casino*, 640 F.3d 471, 474–75 (1st Cir. 2011). These elements reflect the foundational principle, shared by federal and Massachusetts law, that arbitration agreements must be enforced according to their terms. *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986); *McInnes*, 466 Mass. at 261.

Although the FAA governs enforcement, courts apply state contract law — here, Massachusetts law — in determining formation, interpretation, and defenses, so long as the state law does not disfavor arbitration. *First Options of Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339–41 (2011). Massachusetts law fully aligns with federal policy and enforces arbitration provisions in commercial contracts as written. *McInnes*, 466 Mass. at 261.

The FAA mandates that courts stay litigation and compel arbitration where, as here, a valid arbitration agreement governs the dispute. 9 U.S.C. §§ 3–4. Here, the MSA includes the following broad and mandatory arbitration clause:

> **Arbitration.** "If there is a dispute regarding the SERVICES, SOW(s) [Statement of Work], or this Master Services Agreement, the parties agree to discuss resolution of the dispute in good faith. Any dispute that cannot be resolved by the parties directly shall be timely submitted to the Boston, Massachusetts office of the American Arbitration Association ("AAA") for final and binding resolution, pursuant to the AAA Rules and Procedures for Arbitration of Commercial Disputes (single arbitrator)."

*See* MSA, Ex. 1 at 3. The arbitration clause is comprehensive and unqualified. The present dispute arises directly out of the parties' performance and obligations under the MSA and therefore falls squarely within the scope of the clause. DCG promptly invoked arbitration and has not engaged in conduct that constitute waiver.

DCG is also submitting, as **Exhibit 3** to this Memorandum of Law, its Demand for Arbitration filed with the American Arbitration Association ("AAA"), asserting DCG's affirmative claims against Bangor arising from the same services, Statements of Work, and conduct governed by the MSA. DCG's initiation of arbitration further confirms that it is diligently enforcing the parties' agreement and has not waived its contractual right to arbitrate. The parties' dispute is therefore already proceeding in the AAA forum designated by the MSA, and compelling arbitration here will ensure that all related claims are resolved in a single, contractually mandated arbitral proceeding.

Because (1) the MSA contains a valid and enforceable written arbitration agreement, (2) this dispute arises out of, and relates directly to, the services, Statements of Work, and obligations governed by that agreement, and (3) DCG has not waived its right to arbitrate, the FAA requires this Court to compel arbitration and stay or dismiss this action. *See* 9 U.S.C. §§ 3–4; *Next Step Med. Co. v. Johnson & Johnson Int'l*, 619 F.3d 67, 71 (1st Cir. 2010). The Court need not and

should not reach the merits of Bangor's claims or DCG's defenses to those claims in resolving this Motion.

## V. RESERVATION OF RIGHTS AND DEFENSES

DCG brings the Motion to Compel Arbitration solely to compel arbitration and to enforce the parties' contractual expectations regarding forum and confidentiality. DCG does not submit to this Court's jurisdiction for purposes of adjudicating the merits of Bangor's claims, and expressly reserves all rights and defenses, including but not limited to lack of personal jurisdiction, improper venue, contractual limitations on liability and damages, and all affirmative and substantive defenses. Nothing in the Motion should be construed as a waiver of any such defenses.

## VI. EXTENSION REQUEST.

Because the Federal Arbitration Act requires courts to determine arbitrability before the parties proceed to the merits, DCG requests a modest extension of time to answer or otherwise respond to the Complaint until 14 days after the Court enters its Order resolving the Motion to Compel Arbitration. Federal courts in the First Circuit have made clear that proceeding with merits litigation before resolving arbitrability is inefficient and inconsistent with the FAA's structure. *Next Step Med. Co. v. Johnson & Johnson Int'l*, 619 F.3d 67, 71 (1st Cir. 2010) (the FAA "requires courts to determine arbitrability before proceeding to the merits"). Courts routinely extend answer deadlines or stay responsive-pleading obligations while a motion to compel arbitration is pending to avoid unnecessary litigation activity. *See Boustead Sec., LLC v. Leaping Grp. Co., Ltd.*, 656 F. Supp. 3d 447 (S.D.N.Y. 2023) (compelling arbitration and staying action pending arbitration).

Granting this modest extension will conserve judicial resources and avoid unnecessary motion practice if the Court compels arbitration. DCG therefore requests that its deadline to answer or otherwise respond be extended to **14 days after** the Court issues its ruling on this Motion.

## VII. REQUESTED RELIEF

For the foregoing reasons, Defendant Darling Consulting Group requests that the Court enter an Order:

1.  **Compelling arbitration** of all claims asserted in this action pursuant to 9 U.S.C. § 4 and the parties' Master Services Agreement;

2.  **Staying this action** in its entirety pending completion of arbitration under 9 U.S.C. § 3, or, in the alternative, dismissing the action without prejudice;

3.  **Extending Defendant's deadline to answer or otherwise respond** to the Complaint until 14 days after the Court enters an Order resolving this Motion; and

4.  Granting **such other and further relief** as the Court deems just and proper.

Respectfully submitted,

By: /s/ Christopher R. Drury
    Christopher R. Drury
    Gordon Rees Scully Mansukhani, LLP
    One Financial Plaza
    755 Main Street, Suite 1700
    Hartford, CT 06103
    Tel: 860-494-7552
    Email: cdrury@grsm.com

Counsel for Defendant Darling Consulting Group

Jennifer Beckage
The Beckage Firm PLLC
403 Main Street, Suite 727
Buffalo, NY 14203
Tel: 223-253-4762
Email: jbeckage@thebeckagefirm.com
Admitted in New York

Jesse W. Lemon
The Beckage Firm PLLC
403 Main Street, Suite 727
Buffalo, NY 14203
Tel: 202-799-8140
Email: jlemon@thebeckagefirm.com
Admitted in Florida

## **CERTIFICATE OF SERVICE**

      I hereby certify that on February 23, 2026, a copy of the foregoing MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION was filed through the Court's ECF system and sent electronically to the registered participants as identified on the Notice of Electronic Filing.

Daniel L. Rosenthal, Esq.
Marcus Clegg
16 Middle Street, Unit 501
Portland, ME 04101-5166
Email: drosenthal@mcm-law.com

                                                          */s/ Christopher R. Drury*
                                                          Christopher R. Drury